IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| Gary Carter, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    No. 11-2361-T/P |
| | ) |
| Officer Howard, Officer Harris, | ) |
| Sergeant Paige, | ) |
| | ) |
|     Defendants. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the court for an evidentiary hearing on damages following the District Judge's entry of default judgment against defendants "Officer Howard," "Officer L. Harris," and "Sergeant G. Paige," all of whom were officers with the Memphis Police Department ("MPD") at the time of the alleged assault at issue in this case.[1] Plaintiff Gary Carter, an inmate, alleges that Officer Harris assaulted him during a traffic stop, resulting in multiple injuries to his neck, shoulders, and face. He alleges no wrongdoing on the part of Officer Howard or Sergeant Paige.[2]

---

[1] Neither the complaint nor any documents in the record identify the officers by their first names.

[2] Although Carter alleges in his complaint that each defendant assaulted him, see (Compl. ¶ IV), Carter referred to Officer Howard and Sergeant Paige as "witness[es]" at the evidentiary hearing and stated that neither of them assaulted him.

Carter is seeking $150,000 in damages.

For the reasons below, it is recommended that Carter be awarded $5,000 in damages against Officer Harris, and no damages against either Officer Howard or Sergeant Paige.

## I. PROPOSED FINDINGS OF FACT

Gary Carter filed a *pro se* § 1983 complaint in the Western District of Tennessee on May 3, 2011. (ECF No. 1.) Defendants Officer L. Harris, Officer Howard, and Sergeant G. Paige were properly served with the summons and complaint by the U.S. Marshals Service on March 27, 2012, April 6, 2012, and March 27, 2012, respectively. None of the defendants responded to the complaint. Carter's motion for default judgment was granted on June 20, 2012, and an evidentiary hearing on damages was held on August 2, 2012. Despite providing the defendants with notice of the damages hearing, only Carter attended the hearing. The facts, as supported by the record and Carter's testimony, are set forth below.[3]

On March 16, 2011, at approximately 2:00 a.m., Carter was driving up the entrance ramp near Getwell Road in Memphis, Tennessee, to merge onto I-240. Upon realizing that there was traffic congestion on I-240, Carter put the car in reverse and drove backwards down the entrance ramp. Officer Harris, who was on

---

[3]Exhibits include the following: the Affidavit of Complaint from the traffic stop on March 16, 2011; medical records dated March 16, 2011, from the Regional Medical Center at Memphis; Carter's eye care medical records; and Carter's mental health records.

-2-

patrol in the area, attempted to stop Carter by activating her siren and blue lights. Instead of stopping immediately, Carter passed Officer Harris's car. Eventually, Carter stopped, exited his vehicle, and walked towards Officer Harris.[4] Carter informed Officer Harris that he did not have a driver's license. Officer Harris stated to Carter that she smelled a strong odor of alcohol on his breath, and Carter admitted to her that he had been drinking.[5] Carter was subsequently handcuffed by Officer Harris and placed in the back of her squad car.[6] Officer Harris then proceeded to call Carter names and "say[] how ignorant and stupid . . . [Carter] was." Officer Harris also advised Carter that he was a habitual motor vehicle offender and that he did not have insurance on the vehicle.

Approximately thirty to forty minutes later, she opened the back door of the squad car. Officer Harris attempted to administer a breathalyzer test, which Carter refused. Officer Harris then struck Carter in the head with a hard black object.[7] When Carter

---

[4]This fact is supported by the Affidavit of Complaint. At the evidentiary hearing, Carter disputed the allegation that he drove past Officer Harris's squad car before he came to a complete stop.

[5]At the evidentiary hearing, Carter admitted to drinking six cans of Budweiser within the hour prior to being stopped.

[6]Carter was accompanied by a female passenger, Lawanda Emley.

[7]Carter could not recall at the evidentiary hearing whether he was struck with a flashlight, a baton, or another object.

fell towards Officer Harris, she struck him again with the hard black object, causing Carter to fall forward so that he was partially outside the vehicle. Officer Harris then began to kick Carter and slam the passenger door against Carter's head, neck, and shoulders rendering Carter unconscious. Thereafter, Carter's vehicle was inventoried and towed.

While en route to the MPD station at Union Avenue ("Union Station"), Carter began to violently kick the doors and windows of the squad car. Carter also threatened Officer Harris, including yelling "I'm going to beat [yo]u whore when I get a chance!"[8] Officer Harris met defendants Sergeant G. Paige and Officer Howard at Union Station, where a blood alcohol test was performed on Carter. Carter's blood alcohol content was determined to be 0.187.[9] While at Union Station, Carter had to be restrained as a result of continuous kicking and struggling with officers.[10] Carter was then asked by Officer Howard and Sergeant Paige if he would

---

[8]This fact is supported by the Affidavit of Complaint. In his testimony given during the evidentiary hearing, however, Carter stated that he was rendered unconscious and "[w]hen I woke up I was at the Union Station."

[9]The Affidavit of Complaint states that Carter was given a blood alcohol test upon arrival at Union Station. It is unlawful for a person with a blood alcohol content of 0.08 or higher to drive an automobile in the state of Tennessee. (See TENN. CODE ANN. § 55-10-401 (2010)).

[10]Carter claims in his complaint that he was restrained in the back of the squad car and then taken to an unknown location where he was sexually assaulted. However, at the evidentiary hearing, Carter did not offer any testimony about a sexual assault.

like to go to the Regional Medical Center at Memphis ("Medical Center"). Carter responded affirmatively and was transported by Officer Howard and Sergeant Paige to the Medical Center. Carter stayed at the Medical Center for approximately sixteen hours.[11]

Carter's medical records from the Medical Center indicate the following. At 6:15 a.m., a medical provider noted that "Pt states in altercation with police with no [loss of consciousness]. Pt states 'I am going to say whatever I have to say to keep from going to jail. There is nothing wrong with me but whatever I have to do to keep from going to jail.'" The same medical provider noted "[s]welling . . . to left jaw area. Two small lac[eration]s noted to upper lip. Abrasion noted to left forearm. Pulses palpable and pt able to move all extremities without difficulty." At 8:00 a.m., Carter is described by another medical provider as "continues belligerent, + uncoop[erative]. Sits upon stretcher + moves all extrem[itie]s . . . no problem. Shouts . . . [with] pain to even light touch." While at the Medical Center, Carter underwent a CT scan of his head, which found "[n]o acute intracranial findings" and a CT scan of his spine, which found "[n]o acute cervical spine fracture or sublaxation." A CT scan of his face revealed a "[n]ormal CT face," and a chest x-ray found "no acute masses,

---

[11]Carter testified at the evidentiary hearing that he stayed at the Medical Center for twelve to thirteen hours. Medical records indicate that he was admitted to the hospital at 6:30 a.m. and discharged at 10:10 p.m.

effusions, or infiltrates" and "no vascular congestion or evidence of CHF."[12] Carter was given a neck brace and was discharged with a diagnosis of "cervical strain." Carter was then transported to jail. Carter currently is housed at the Shelby County Penal Farm, where he is serving a four-year sentence as a result of being convicted for driving while being an habitual motor vehicle offender.

Carter testified at the hearing that, since the incident on March 16, 2011, he has suffered "problems with my shoulder" and that he "can't raise my arms all the way up" anymore. In addition, he cannot "sleep because my neck continues to hurt" and that he "had some damage done to my eye" such that he now must wear glasses.[13] He also experiences "muscle spasm[s] every now and then." In addition, the Shelby County Penal Farm recently stopped giving Carter pain medication that he began taking shortly after the March 16 incident. The Shelby County Penal Farm also no longer allows Carter to receive steroid shots in his shoulders because, as Carter stated, it "would . . . thin my bones."[14]

---

[12]"CHF" is a common medical abbreviation for "Congestive Heart Failure."

[13]Eye care records indicate that on February 14, 2012, Carter was prescribed eyeglasses, which cost a total of $25.60.

[14]Medical records provided by Carter from the Memphis Mental Health Institute relate to treatment received prior to the March 16 incident. Therefore, they will not be used to determine damages suffered by Carter.

## II. PROPOSED CONCLUSIONS OF LAW

Carter filed his complaint pursuant to 42 U.S.C. § 1983. Section 1983 "does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States." Aldini v. Johnson, 609 F.3d 858, 864 (6th Cir. 2010). "'In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force.'" Aldini, 609 F.3d at 864 (quoting Graham v. Connor, 490 U.S. 386, 394 (1989)). The specific constitutional infringement in this matter is a constitutional tort under the Fourth Amendment.[15]

Liability has been established through the District Judge's entry of default judgment. See Flynn v. People's Choice Home Loans, Inc., 440 F. App'x 452, 455 (6th Cir. 2011) (citing Kelley v. Carr, 567 F. Supp. 831, 841 (W.D. Mich. 1983)) ("A default judgment on well-pleaded allegations establishes only defendant's liability . . . ."); Antoine v. Atlas Turner, Inc., 66 F.3d 105, 110 (6th Cir. 1995) ("[D]efault admits only defendant's liability

---

[15]The two principal "sources of constitutional protection against physically abusive governmental conduct" are the Fourth and Eighth Amendments of the U.S. Constitution. Aldini, 609 F.3d at 864 (internal quotation marks and citation omitted). "The Fourth Amendment . . . applies to excessive-force claims that arise[] in the context of an arrest or investigatory stop of a free citizen, while the Eighth Amendment . . . applies to excessive-force claims brought by convicted criminals serving their sentences." Id. (internal quotation marks and citations omitted).

and the amount of damages must [still] be prove[n] . . . ."); MC-UA Local 119 Health & Welfare Fund v. HLH Constructors, Inc., No. 11-0241-WS-M, 2011 WL 5419740, at *3 (S.D. Ala. Nov. 9, 2011) ("Liability having thus been established, the only remaining question is the damages that should be awarded to plaintiffs in the Default Judgment.") While liability has been established by the entry of default judgments against all three defendants, the court must still address the issue of whether there is a "legitimate basis for any damage award." MC-UA Local 119 Health & Welfare Fund, 2011 WL 5419740, at *3. "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must . . . ascertain the amount of damages with reasonable certainty.'" Vesligaj v. Peterson, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

Carter claims in his complaint that Officer Harris, Officer Howard, and Sergeant Paige "willfully attacked the plaintiff." (Compl. ¶ IV.) During the evidentiary hearing, however, Carter testified that Sergeant Paige and Officer Howard were not present when Officer Harris assaulted him, they took no part in any assault, and their involvement in the events at issue was limited to transporting him to the hospital after he arrived at Union Station. Based on Carter's testimony, the court finds that Officer

Howard and Sergeant Paige are not liable for any of Carter's injuries, and thus, Carter is not entitled to recover any damages from these two officers. See Kemp v. Robinson, No. 02-CV-74592-DT, 2009 WL 2382427, at *8 (E.D. Mich. July 31, 2009) ("The court . . . finds that . . . [the defendant] is not liable for any of the damages. Although default judgment has been entered . . . , it is clear on the record before the magistrate judge that plaintiff has not established any link between his damages and the actions of [the defendant].").

In regard to Officer Harris's liability, "the amount of damages are not deemed true" upon entry of default judgment, and the court "must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Vesligaj, 331 F. App'x at 355 (citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155). As a defaulting party, Officer Harris "'is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated.'" Hutton Constr., Inc. v. Northeast Florida Contractors, Inc., No. 1:07-cv-187, 2008 WL 2645547, at *11 (E.D. Tenn. June 30, 2008) (quoting Ortiz-Gonzalez v. Fonovisa, 277 F.3d 59, 62-63 (1st Cir. 2002)); Nat'l Satellite Sports, Inc. v. Mosley Entm't, Inc., No. 01-CV-74510-DT, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) ("For a default judgment, well-pleaded factual allegations are sufficient to establish a defendant's liability.").

To determine the amount of damages to which Carter is entitled, the extent of Officer Harris's liability must be assessed based on the evidence and testimony presented. The court may consider several factors in evaluating Carter's testimony regarding the alleged assault and his resulting injuries, including: Carter's ability see, hear, or be aware of the things about which he testified; Carter's ability to recall those things; the reasonableness of Carter's testimony in light of the other evidence in the case; and whether Carter's testimony was contradicted by previous statements or other evidence. (See Tennessee Pattern Jury Instructions - Civil § 2.20 (2011)).

In McHenry v. Chadwick, the Sixth Circuit affirmed a jury award of $150.00 in compensatory damages and $2,600 in punitive damages, as well as reasonable attorney's fees awarded by the District Judge, in an action by a prisoner against correctional officers. McHenry v. Chadwick, 896 F.2d 184, 185-186 (6th Cir. 1990). The plaintiff in McHenry alleged that officers assaulted him on two occasions by striking him "in the back, stomach, and legs," including – on one occasion – "with a billy club." Id. at 186. The plaintiff did not suffer broken bones or permanent impairment from either incident. In Kemp v. Robinson, however, a district court in Michigan awarded $30,000 in compensatory damages, $10,000 in punitive damages, and $20,000 in attorney's fees to a prisoner in a civil rights action against a correctional officer,

who "put his fingers in plaintiff's face and eyes" and "str[u]ck plaintiff in . . . his ribs and thighs" for a period of "about ten minutes," resulting in permanent "shoulder and rotator cuff" impairment. Kemp, 2009 WL 2382427, at *6.

The case before this court is distinguishable from Kemp in the degree of evidence substantiating Carter's claims and injuries. In Kemp, the assault occurred within the confines of a prison, and the plaintiff reported the incident to both the prison nurse and shift sergeant. Id. at *1. The plaintiff also filed a prison grievance which resulted in a formal investigation of the assaulting officers. Following the formal investigation, the officers were charged with "excessive use of force . . . in violation of prison regulations." Id. In this case, however, Carter was intoxicated throughout the events in question. Carter's recollection of the events is inconsistent with both the medical reports and the Affidavit of Complaint.[16] There is no medical evidence of permanent injury. There are also substantial differences between Carter's initial complaint and his hearing testimony regarding the abuse he suffered. Accordingly, the extent to which Carter's alleged injuries can be attributed to Officer Harris's use of force is questionable, and the amount of damages that can be ascertained

---

[16]Carter claims he was unconscious throughout the car ride to Union Station, but the Affidavit of Complaint states that Carter was kicking violently and yelling threats during this time. Medical records also indicate that during his treatment, Carter was belligerent and admitted that there was "nothing wrong" with him.

with "reasonable certainty" is limited as such.

Based on the evidence of injury in this case, the court finds this action to be more analogous to that in McHenry, and hereby recommends an award of $5,000 in damages against Officer Harris.

### III. RECOMMENDATION

For the reasons above, it is recommended that an award of damages against each defendant be entered as follows:

Defendant Harris: $5,000 in damages.

Defendant Howard: No damages.

Defendant Paige: No damages.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

August 24, 2012
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**